IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JMO Wind-Down, Inc., | ) | Case No.  16-10682 (BLS) |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| JMO WIND DOWN LIQUIDATING TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No.  17-51042 (BLS) |
| | ) | |
| DANIEL MATTES, THOMAS KASTENHOFER, CHAD STARKEY, AMPALU INVESTMENT CMBH, and KTI PRIVATSTIFTUNG, | ) ) ) ) | |
| _____ | ) | |

## OPINION

Before the Court is the JMO Winddown Trust's (hereinafter the "Trust" or the "Plaintiff") Motion for Finding of Spoliation of Evidence and for Sanctions (the "Motion") [Docket No. 70].  By the Motion, the Trust asks the Court to conclude that Defendant Daniel Mattes has intentionally concealed or destroyed evidence in this matter, and further asks the Court to enter default judgment against Mr. Mattes as a sanction for his conduct.  For the reasons that follow, the Court will grant the Motion and enter default judgment against Mr. Mattes.

## BACKGROUND

These Chapter 11 bankruptcy proceedings were commenced on March 21, 2016 (the "Petition Date").  Prior to the Petition Date, the Debtor was engaged in the business of online and mobile identity management and credentials authentication.  The Debtor's assets were sold pursuant to a motion filed under 11 U.S.C. §363, and subsequently the Court confirmed the

Debtor's Plan of Liquidation by Order dated October 21, 2016.  The Trust came into being on the effective date of the Plan and possesses the right and authority to, *inter alia*, prosecute claims and causes of action previously held by the estate.

This adversary proceeding was filed by the Trust on September 1, 2017 and sought recovery against several former officers and directors of the Debtor for alleged breaches of fiduciary duty and related theories.  The record reflects that all parties to the suit (including Mr. Mattes) participated in a series of mediations in 2019.  The third of these mediations resulted in a global settlement among all parties in December of 2019, and the litigation was consensually stayed while the parties worked to document the settlement.

Mr. Mattes backed out of that settlement just a month later.  The Trust documented and consummated the settlement with all of the remaining defendants, and Mr. Mattes filed his answer generally denying the Trust's allegations on February 21, 2019.  As will be discussed in greater detail below, following the filing of Mr. Mattes' answer the Trust propounded standard discovery requests upon Mr. Mattes to get the lawsuit moving forward.

The record reflects that in June 2019, the Trust and Mr. Mattes re-engaged in settlement discussions.  The record further reflects that Mr. Mattes and the Trust again reached a comprehensive settlement in June of 2019.  Mr. Mattes again backed out of the settlement shortly thereafter.  The Trust moved in this Court to enforce the terms of the settlement it believed Mr. Mattes had agreed to.  Finding that there was not presently a binding agreement between the parties, the Court denied the Trust's request in January of 2020 [Docket No. 60]. That left the parties to proceed forward with litigation.

As detailed more fully below, the Trust spent well over a year communicating with counsel for Mr. Mattes in an effort to obtain responses to basic discovery requests clearly

relevant to the dispute.  The end result of this effort is effectively no meaningful production or responses from Mr. Mattes, and Mr. Mattes has not produced a single document.  Further, it is apparent that Mr. Mattes destroyed or has concealed emails and information from his personal computer that he was obliged to retain, preserve, and ultimately produce.

**Litigation Hold and the Discovery Process**

Well in advance of the Petition Date, the Debtor's Board of Directors authorized a special committee of the Board to conduct an investigation into alleged and suspected financial irregularities and wrongdoing.  In connection therewith, the Board retained the international law firm Cooley LLP ("Cooley") to conduct the investigation.

The record reflects that in 2015 Cooley delivered to Mr. Mattes and others a comprehensive litigation hold directive that required the preservation of specified documents:

> Further, please be advised that you, Thomas, and Chad, should not delete any emails or documents related to (1) the Company's revenue accounting and forecasting for 2013 and 2014, (2) the secondary sales (including any internal communications regarding the sales, communications with counsel regarding the sales, or communications with purchasers and or Citizen VC), and (3) the promissory note following the Series C investment in October 2013.

(Martin Decl. at Ex. A, March 31, 2015 email) [Docket No. 70, ¶ 2].  The record reflects that the Cooley firm engaged for months with Mr. Mattes and ultimately obtained only a few emails from Mr. Mattes.

Two years later, following the plan confirmation, the Trust sent another litigation hold letter to Mr. Mattes.  That directive provided, in relevant part, as follows:

> Accordingly, Mr. Mattes has a continuing duty to prevent any and all spoliation of evidence related the Liquidated Trustee Claims. **More specifically, Mr. Mattes and his agents and associates are under a duty to preserve any and all physical evidence, physical and electronic documents, files, emails (including emails to/from the dmattes45@gmail.com email address) . . .**

**No physical or electronic evidence or other items relevant to the Liquidated Trustee Claims should be altered, destroyed, or disposed of in any way. Any regularly scheduled purging or deletion should be immediately halted to the extent necessary to adhere to this notice.** Electronic data must be preserved in its original electronic format. Electronic materials that should be preserved include, but are not limited to, documents, spreadsheets, emails and attachments, text messages, voice mail, recorded conversations, facsimile logs, electronic calendars, and application software required to access such data. The electronic information must be preserved whether it is on a desktop computer, server, laptop, PDA, portable drive, cell phone, storage device, backup tape, or elsewhere.

It is Mr. Mattes' duty to notify his agents and any other associates or interested persons of their duty to preserve such physical and electronic items. **As such, Mr. Mattes and his agents or associates must (1) suspend any regularly scheduled document destruction; (2) inform all agents and associates to immediately cease deleting and preserve potentially relevant data; (3) stop any automatic deletion or alteration of emails or other electronic data by email programs, telephone and other electronic systems, as well any automatic deletion or alteration by internet and telecommunications service providers; and (4) stop any automatic recycle or deletion of data on personal computers, telephones, voice mails, tablets, and other devices.**

(Martin Decl. at Ex. D) [Docket No. 70, ¶ 6).

After the collapse of both of the settlement agreements that Mr. Mattes had ostensibly entered into, the Trust spent over a year endeavoring to obtain discovery from Mr. Mattes. When Mr. Mattes implausibly responded that he had no documents from his private Gmail account (which he was under an obligation to preserve dating back to at least 2015), the Trust spent months negotiating with Mr. Mattes the terms for joint engagement of a discovery consultant to search Mr. Mattes' Gmail account for responsive documents.  The consultant was engaged (at the Trust's expense) in May 2020.

The discovery consultant's report [Docket No. 70] is brief.  After describing at least three dozen search terms, no responsive emails were found, and the discovery consultant concluded that the personal emails of Mr. Mattes had been purged:

On September 30, 2020 iDS inspected Daniel Mattes laptop computer and there were no emails located on his laptop. iDS also inspected the Gmail account and

found no logs available within the Gmail account.  iDS cannot tell when the Gmails from within the date range between February 2010 and April 2015 were purged.

(Vaughn Decl. ¶ 6) [Docket No. 70, Ex. 2].

The end result of five years of litigation holds and legitimate discovery requests in a lawsuit in federal court culminated in zero production and a clear record that Mr. Mattes has failed to comply with his legal obligations.  The Trust moved for a finding of spoliation and for sanctions on October 15, 2020.  A hearing on the Trust's Motion was held on January 19, 2021. At the conclusion of the hearing, the Court acknowledged the severity of the potential sanction and afforded the parties two weeks to attempt to consensually resolve this matter, failing which the Court would issue its ruling.  The Court is now advised that settlement efforts have failed. This matter is ripe for decision.

## **DISCUSSION**

Sanctions for violation of the discovery rules are governed by Bankruptcy Rule 7037. That rule provides, in relevant part, as follows: "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

"In law, spoliation refers to the hiding or destroying of litigation evidence, generally by an adverse party." *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 320 (3d Cir. 2014) (internal citations and quotations omitted). "In the event that a party undertakes spoilage, the sanctions available to a court include dismissal of the relevant claim or a presumption by the factfinder that the spoiled evidence was harmful to the offending party's case." *Capogrosso v. 30 River Court East Urban Renewal Co.*, 482 Fed. Appx. 677, 682 (3d Cir. 2012), citing *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 72–73 (3d Cir. 2012). "A party who has reason to anticipate litigation has an affirmative duty to preserve evidence which might be relevant to the issues in the lawsuit." *In re Wechsler*, 121 F. Supp. 2d 404, 415 (D. Del. 2000). This "duty to avoid spoliation extends to the realm of electronic evidence. Thus, a defendant who is found, for example, to have deleted data on a hard drive, deleted a web page, or deleted e-mail backup tapes, may be exposed to liability in much the same way as a defendant who destroys evidence in a more conventional manner." *Eidson, Lewis S., et al.*, 5 Litigating Tort Cases, § 58:29 (2020).

Case law teaches that courts must undertake a two-step process to determine whether spoliation sanctions are warranted. *Archer v. York City Sch. Dist.*, 227 F. Supp. 3d 361, 379 (M.D. Pa. 2016), aff'd, 710 F. App'x 94 (3d Cir. 2017). The first inquiry is whether spoliation in fact occurred. "Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and the duty to preserve the evidence was reasonably foreseeable to the party." *Bull*, 665 F.3d at 73. After a finding of spoliation, the second prong concerns the appropriate remedy. A well-developed body of law identifies three factors for the Court to assess: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial

unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future. *GN Netcom, Inc. v. Plantronics, Inc.,* 930 F.3d 76, 82 (3d Cir. 2019), quoting *Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76, 79 (3d Cir. 1994); *In re DaimlerChrysler AG*, No. CIV.A. 00-993-JJF, 2003 WL 22951696, at *1 (D. Del. Nov. 25, 2003) (same).

Dispositive sanctions are warranted only where "'the non-responsible party's case is severely impaired because it lacked the information that was not produced.'" *GN Netcom, Inc. v. Plantronics, Inc.,* 930 F.3d 76, 82 (3d Cir. 2019), quoting *Bull*, 665 F.3d at 83. Prudence counsels that the dispositive sanctions (such as entry of default judgment) are to be sparingly applied, as the result is denial of a party's day in court. Here, however, the sanction is warranted.

As to the first prong, the record clearly supports a finding of spoliation. The missing discovery is from Mr. Mattes' personal Gmail account, indisputably within his control. Further, the causes of action articulated in this litigation allege wrongdoing prior to 2015, and Mr. Mattes used his personal account for company business extensively in this period. And yet, Mr. Mattes has not produced any responsive information despite being under an obligation to preserve and retain evidence dating back at least six years. Instead, the record demonstrates that he has destroyed the evidence.

Turning to the appropriate remedy, the record is clear that Mr. Mattes is solely and exclusively responsible for the loss or destruction of the emails. It was Mr. Mattes who enjoyed control of the Gmail account after receipt of the litigation hold letter, and the only plausible conclusion is that he destroyed the emails before proper discovery could take place.

The Trust has demonstrated that it is severely prejudiced by Mr. Mattes' conduct. In this adversary proceeding the Trust seeks damages from Mr. Mattes on account of his alleged breach of his fiduciary duties while serving as an officer and director of the Debtor. Mr. Mattes used the personal account to conduct company business, and he has intentionally destroyed and suppressed pertinent evidence. The Court is entitled to infer that the destroyed evidence is of value and that the Trust's ability to fully and fairly litigate its case has been irretrievably damaged. *Collins v. Throckmorton*, 425 A.2d 146, 150 (Del. 1980).

The record developed here shows that Mr. Mattes wiped clean his personal emails to prevent the Trust and ultimately the Court from conducting a full proceeding and trial on the merits. Moreover, Mr. Mattes has played games with the Trust and the Court, repeatedly agreeing to and then backing out of settlements, and later causing the substantial delay and cost of an outside investigation when he already knew the results.

Entry of default judgment as a sanction under Rule 37 is a severe penalty, to be imposed rarely. Mr. Mattes' conduct rises to a level that imposition of this sanction is not only warranted but is the only appropriate remedy in light of the circumstances described and demonstrated here. Default judgment will issue. Counsel for the Trust shall submit an appropriate form of judgment order within seven (7) days of the date hereof.

BY THE COURT:

Dated: February 17, 2021

Brendan Linehan Shannon
United States Bankruptcy Court